We are now going to move to Appeal 23-2502, Larry Sapp v. Kimberly Foxx. We're going to begin with oral argument from Mr. Daley. Good morning, your honors. My name is Daniel Daley. I represent Mr. Sapp. I think we reserved a couple of minutes for rebuttal. Five minutes, yes. Yes, your honor. Today, Mr. Sapp is asking his court to overturn the district court's grant of the 12B-6 motion to the people, which is the state of Illinois, holding that the statutes that are election co-statutes and the municipality co-statutes are a violation of the Eighth Amendment. To understand Mr. Sapp's predicament at this time, though, I think it's necessary, your honor, that we use our glasses and we see this through the lens of Ruffin v. Commonwealth of Virginia. And there's an important piece we want to point out here. If he can be said to have any visinage at all as to him within the walls of the penitentiary, which, if not literally and actually in the eye of the law, surround him wherever he may go until he is fully discharged, if he has forfeited his right, which every free man may claim a right by jury, that forfeiture is a consequence, a collateral consequence. It is an invisible punishment. It is a collateral consequence against a convicted felon as much as one of the penalties attached to the crime as the whipping post, the iron mask, the gag, the dungeon, which is provided for offenses other than felony. So felony is the big one, okay? He is for a time being a slave in a condition of penal servitude and subject to the laws of the state as they may choose to prescribe. Mr. Daly, before you get too far into the merits, would you mind if I back you up just one step? Absolutely, Your Honor. Okay. And the question is this. Given the litigation that occurred in the Cook County Court, in the state court, you with me on that? Yes. Okay. The question I have is why the substantive Eighth Amendment cruel and unusual punishment argument that you're articulating and that you've advanced in your brief, why is that not claim precluded under Illinois claim preclusion law? Okay. Your Honor, first, we attempted to, and to be clear, just a rendition, there was a petition for relief of disability that was actually filed in that case. The court in that case said that that wasn't the wrong case, and we obviously knew that that case, that petition needed to go over to the criminal court. What the chancery court said first was that this was not a matter that could be combined with all of these other elements. Okay. I follow that part just fine. The part that is confusing to me is why in that litigation, forget the petition side of it, why in that litigation, as you were arguing that there was a violation of the excessive fines clause within the Eighth Amendment, why you couldn't have partnered with that or accompanied that argument with an argument that the cruel and unusual punishment clause of the Eighth Amendment was also violated? We would go back to what the chancery court has specifically said, and that was that she could not determine his constitutionality in terms of being in office because at the time, he still had the felony. So, let me do it this way. Is that argument based on the nature of the chancery court in Cook County? Is that it? Yes, Your Honor. The chancery court has specifically laid out they did not have the authority. They did not have the ability to do the future. They could not determine and did not determine his eligibility with respect to future elections. So, its job specifically was simply to remove him if it fell under this law. And we support that. So, can I – I don't want to put words in your mouth, but is what you're saying this that there was no – there's no way procedurally – you can change my words, okay? There's no way procedurally for Mr. Sapp to have argued that the Eighth Amendment's cruel and unusual punishment clause was violated because according to Illinois law as, you know, given to you by the judge in the chancery court, that claim, that contention could only be pursued only within the context of a petition for relief from disabilities which could only be considered by the criminal court. In other words, there's no way to argue cruel and unusual punishment in front of the chancery court because the exclusive forum for that is the forum that will consider the petition for relief from disabilities. Is that what you're saying? I'm saying – and partially yes, Your Honor, but I think it needs to go one step further. And that is that if you could hear the Eighth Amendment claim, then why couldn't you have heard the Certificate of Relief from Disability? They would have fallen under the same – outside, obviously, of the court warrant. Yeah, I don't know the answer to that. But what I do know is you're putting in front of this court – I understand why. I mean, you're clear about it. You're putting in front of this court an argument that this limitation, this prohibition, right, violates the cruel and unusual punishment clause of the Eighth Amendment, right? And before we get to the merits of that, I think we have to consider, is it claim precluded under Illinois' transactional claim preclusion test? And again, Your Honor, we would say no, and again for – and there's separate reasons. Outside of what occurred in that case, Mr. Sepp also re-ran. So that would have also mooted his issue, the issue in terms of what could have been raised in that case because now we had a new set of facts. But even more importantly, to your point, whether or not he could have raised that this statute was a violation really goes also to the statute. And the issue is that he was already being subject. We're not talking about an ex post facto law here. We're talking about something that already occurred. So the jurisdiction of that court would have been limited, and that explains why they would not have been able to hear, again, the Certificate of Relief from Disability. They would have also been claim precluded in the sense that they would not have been able to properly discuss the issue of Eighth Amendment. And I think the court points that out as well in the motion to strike as well as moving forward in the second show cause order where she says we could not determine that in this courtroom. Therefore, filing this in the state court and to challenge that became the proper mechanism. And, again, we move on to the – let's see, I've got three minutes left. If you'd like to reserve your time, you may. If you want to use it now, you may. I would like to reserve that time. Okay, very good. Thank you very much, Mr. Daly. We'll now move to argument from the appellee from Ms. Wasserman. Good morning. Good morning. May it please the court. This court should affirm the decision of the district court for three reasons. First, plaintiff's claim is barred by res judicata. Second, plaintiff has failed to state a claim that the challenged statutes violate the cruel and unusual clause of the Eighth Amendment. And third, any claims under any other constitutional provisions are both explicitly waived and meritless. So turning first to res judicata, plaintiff, A, does not dispute the fact that he raises the same issue here as he did in his state court proceedings, namely that the challenged statutes violate the Eighth Amendment because they're both punitive and they do not contain time limits. His only argument about the application of res judicata is that in a separate contempt proceeding, the state court did not grant the request for contempt because it held that its earlier ouster order applied only to that ouster. It didn't necessarily bar plaintiff from running for office again if he were to become eligible. That doesn't affect any of the elements of either issue preclusion or claim preclusion. In his brief, plaintiff makes a reference to the fact the operative nucleus of common fact, but under Illinois' transactional test, that looks to things like whether or not the two cases arise out of the same motivation, the same time, and whether or not they would form a convenient trial unit. And applying that test here, it's clear that these do arise out of the same transaction. They both arise out of Mr. Sapp's attempt to hold the office of village trustee. His ouster in September 2022 due to his felony convictions. Was there anything that happened in the state court where the state court judge in substance said, I am not able to consider a cruel and unusual punishment argument in this court. You need to raise that in a different forum, whether in connection with a petition for relief from disabilities or otherwise. No, judge. So in the court's opinion related to the motion for summary judgment, plaintiff raised a claim that he labeled as one under the excessive fines clause. And the court in its final order on the merits there rejected that claim and also rejected Mr. Sapp's argument that these statutes were putative at all under the Eighth Amendment. So it decided that issue on the merits. I believe what Mr. Sapp is talking about with his petition for relief from disabilities actually comes before that. Just to back up the procedure of this case, the state filed its quo ronto proceeding. Then after that, Mr. Sapp moves for a petition for relief from disabilities and the state filed a motion to strike that proceeding. And the reason was under the statute that he filed that that statute says you have to bring that kind of case in the criminal court that decided this case. So it doesn't go to the merits of his Eighth Amendment claim at all. That was just a procedural issue. And the state said it wasn't taking a position on whether or not if that petition were granted, if he would be able to hold office. But yes, then the summary judgment proceedings went on. And obviously it's our position that the court had a final decision on the merits there that would bar any decision that would bar a plaintiff from bringing the same kind of argument in front of the federal court. So your position is there's nothing about the chancery jurisdiction that affects this? No. Yes, that is our position. And again, even if this court held that claim preclusion doesn't apply briefly, it's our position that plaintiff has not stated a claim under the cruel and unusual clause of the Eighth Amendment. Just briefly, plaintiff spends a lot of time in his brief talking about policy arguments as to why this type, these types of laws are bad. And the Supreme Court in Richardson v. Ramirez explicitly held that these kinds of arguments are appropriately raised to the legislature that can balance the arguments for and against these kinds of statutes. Here, all that this court is deciding is whether or not an Eighth Amendment claim was stated. And again, it's clear that it's not. Mr. Sapp has not explained why these statutes would have been thought to be punitive, either at the time of the Eighth Amendment or today. Again, he acknowledges the fact that the Illinois Supreme Court and People v. Hoffer has held that the intent of these statutes was to protect the integrity of elections. There's no reference to anything relating to punishment. That's not – Hoffer, though, I thought was rational basis review. And it was the court itself supplying a reason for why a legislature might have a limitation like this. In other words, it's not direct evidence of legislative intent. It's a court surmising why a statute like this might exist. That's true, Your Honor, and the same is true of Parker v. Lyons. I know the court talks about that as well. But in terms – here's the plaintiff's burden to show that this kind of law can only be understood to have – in addition, it can only be understood as being – having some punitive purpose. What's the best evidence you have focused on the Illinois legislature, that the legislature itself understood the ineligibility provision to be civil and not penal? So with regard to – so – and I will just say – so civil v. penal, it's our position that here it's not a civil v. criminal distinction. It's whether it's punitive or not punitive. But here it is what is kind of laid out in People v. Hoffer. We didn't cite anything specifically from the legislative history necessarily, but it's the fact that Illinois has – Is there anything in the legislative history? I believe other than what's referenced in People v. Hoffer, that's all we've presented. We can provide supplemental briefing on that if necessary. But it's our position that Illinois has a motivation to protect the integrity of its elections, and the same justifications that were laid out in Harper v. Lyons are reasonable justifications here. And again, it was that – it would be the plaintiff's burden to show that there is some kind of punitive purpose. Here we believe what was laid out in the Austin v. United States case in making this kind of claim, plaintiff would have to show that either this was understood as punishment at the time of the Eighth Amendment, and if it isn't, then is there anything in the legislative intent that would contradict that understanding? And plaintiff hasn't pointed to anything. So we believe that in the absence of plaintiff providing any kind of evidence of anything contrary to that intent, that he simply can't state a claim under the Eighth Amendment. And with regard to any other constitutional claims, again, plaintiff in his briefing for the temporary restraining order explicitly waived any other arguments. He said he only intended to raise an argument under the cruel and unusual clause, not the excessive fines clause or any other constitutional provision. It's our position that regardless any other constitutional argument would be either foreclosed by precedent or meritless. And if this court has no further questions, we ask that you affirm the decision of the district court. Thank you, Ms. Wasserman. Mr. Daley, we'll go back to you now for rebuttal argument. Thank you, Your Honor. I just want to make sure we're clear on the legislative intent of these statutes. Actually, Kennedy v. Mendoza, if we go back to that actual case with the seven defactors, specifically laid out the right to hold office was always considered a punishment. In fact, Senator Hutcherson of Maine actually lays that out in that case. Justice Brenner cites to that that the right to hold office was always been a penal statute for folks who have been who have at that time been deemed slaves or convicts. So there is definitely a consensus on whether or not these statutes constitute punishments and or punitive effects, which is what Kennedy v. Mendoza was laying out within the seven factors. So, Your Honor, I think that what the government is saying regarding no legislative history is just contradicts the very nature of the statute itself. The statute only applies to someone who has been adjudicated after given process a criminal. And that in itself means not just that it's from not a 14th Amendment issue. We're talking about an actual stripping away of his rights, which is a part of the punishment, which answers back to the chance report why he needed to go back to the chance report to get that removed, that disability, that affirmative disability removed. So we believe that there is absolutely a very clear legislative intent with these statutes that forfeit and prohibits people with convicted records, convicted felons from holding specific offices. And we also think it's important to point out very briefly that even under the res judicata issue that was coming up, the chancery court specifically was laying out that there was no defense. There was no defense put up for a constitutional violation. That was an argument being made, but it wasn't, according to how we understood the chance records ruling, not appropriate to be brought into that specific argument because there was no defense in the chancery proceeding. So the continued violation was not within their purview to deal with, and that's what the chancery court made clear. There was no second proceeding on a so-called order. They tried to use the same exact so-called order and same proceeding. However, the transactional text, transactional test that we're trying to combine still would not be applicable after Mr. And we saw the same thing with people versus Agua. That case came up and he was removed from office. But then he had to file a separate case that challenged from the election board all the way up to the Supreme Court, who found that he was allowed to hold become the mayor in Markham. But that was because he filed his separate he filed a separate action through the election board and appealed. And for those reasons, we're asking this court that they accept our complaint is true and overturn the district court's rule of the 12B6 for the government. Thank you very much, Mr. Daly. Thank you, Ms. Wasserman. The case will be taken under advisement.